[ PHILADELPHIA, APRIL 4TH, 1840. ]

## WILLING *against* THE BALTIMORE RAIL ROAD COMPANY.

### CERTIORARI.

Under the act of assembly to authorise the governor to incorporate the Philadelphia and Delaware County and Southwark Rail Road Companies, passed the 2d day of April, 1831, the Court of Common Pleas by whom the jurors may be appointed to assess the damages sustained by the owner of land taken for the rail-road, has no power to examine into the merits of the report and set it aside on the mere ground of inadequacy or excessiveness of damages.

THIS was a certiorari to the Court of Common Pleas of Delaware County to remove the proceedings in the matter of the petition of

(Willing *v.* Baltimore Rail Road Co.)

Richard Willing, for a jury to assess the damages done to his land by the Philadelphia, Wilmington and Baltimore Rail Road Company.

The act of assembly incorporating the company, and under which the proceedings in this case were had, contained the following provisions.

"SECT. 12. *And be it further enacted by the authority aforesaid,* That when the said company cannot agree with the owner or owners of such required land for the purchase thereof, or for the damages sustained by such owner or owners, or as to the compensation to be paid to the owner or owners of any sand, gravel, stone, wood or other material taken for the purpose aforesaid, or where by reason of legal incapacity or absence of any such owner or owners, no such agreement or purchase can be made, the Court of Common Pleas for the proper county, on application thereto by or on behalf of either party, and at the costs and charges of the said company, shall nominate and appoint twelve discreet and disinterested persons of the said county, and shall issue a precept to the sheriff of the said county, to summon the said twelve persons, to meet on the land so required, or from whence the said materials shall or may be taken, at a day to be expressed in the warrant, not less than ten nor more than twenty days thereafter; and the sheriff, upon receiving the said warrant, shall forthwith summon the said twelve persons, and shall give at least eight days' notice to the respective parties; and the said sheriff shall attend at the time and place named in the warrant; and when nine or more of the said persons shall have appeared, shall in the case of land so required, administer to each of them an oath or affirmation, "that he will faithfully, justly and impartially value the land occupied or required for such rail-road or other works, and all damages which the owner or owners shall sustain, or may have sustained by reason of the construction of the said rail-road and other works, taking into consideration the advantages as well as the disadvantages of the same to the said owner or owners, according to the best of his skill and judgment; and in case of materials taken for the purpose aforesaid, that he will faithfully, justly and impartially value the materials so taken, and fix the rate of compensation to be paid therefor by the said company to the said owner or owners, taking into consideration the advantages as well as the disadvantages arising from the construction of such rail-road and other works, to the said owner or owners, according to the best of his skill and judgment;" whereupon the said persons shall proceed to view the land so required, or the place from whence such materials shall or may be taken, as the case may be, and to hear the evidence of the respective parties : and their verdict signed by the sheriff and at least seven of the jury, shall be returned by the sheriff within five days thereafter to the

(Willing *v.* Baltimore Rail Road Co.)

prothonotary of the said county, who shall file the same; and the said sheriff and persons shall be entitled to the like fees for their respective services, as are allowed on the execution of an order issued by the Orphans' Court, for the valuation of lands of an intestate, under the intestate laws of this commonwealth.

Sect. 13. *And be it further enacted by the authority aforesaid,* That either party shall be at liberty to make exceptions to any verdict rendered according to the provisions of the preceding section, within twenty days after the same shall be returned and filed by the prothonotary as aforesaid; which exceptions shall be heard by the Court of Common Pleas of the proper county, who may either affirm or set aside the same as shall be lawful and right; and if no such exceptions shall be filed within twenty days, or if any verdict be affirmed, then the verdict shall stand as a judgment against the party against whom it is given; but if any such verdict be set aside by the Court, a new precept shall issue to the sheriff, in the manner before specified: *Provided,* That upon the subsequent proceedings, if the party excepting does not recover a verdict more favourable than the verdict so excepted to and set aside, such party shall pay all costs of such subsequent proceedings."

On the 28th of May, 1838, Richard Willing presented a petition to the Court of Common Pleas of Delaware County; in consequence of which the Court appointed twelve persons to value the land of the petitioner, occupied or required for the rail-road.

The jury made a report as follows:

" We, Oborn Levis, &c., eleven of the jurors appointed by the Court and named in the annexed warrant, having met agreeably thereto, and having been duly affirmed according to the form prescribed in the act of assembly, did proceed to view the land of Richard Willing (petitioner in the said precept named) so occupied or required for the Philadelphia, Wilmington and Baltimore Rail Road; and having heard the evidence of the respective parties, and taking into consideration the advantages as well as the disadvantages of the said rail-road to the said Richard Willing, do adjudge that the said Richard Willing has sustained damage by reason of the construction of the said rail-road, to the amount of two thousand four hundred dollars, say $2400."

The petitioner filed the following exceptions to this report:

" 1st. The said jury have not allowed to the said petitioner damages equal to the injury which his property has sustained from the said rail-road, after taking into consideration the advantages as well as the disadvantages thereof.

2d. The said jury have not allowed to the said petitioner any or adequate damages, for obstructing Long Hook and Groom creeks,

thoroughfares, by which means the water in case of freshets in Darby creek, cannot be vented through the sluice on the Delaware river, and must overflow and injure the meadows of your petitioner.

3d. The said jury have not allowed any or adequate damages, for a bridge or passage way over Long Hook creek, which becomes necessary in consequence of the said rail-road.

4th. The said jury have not allowed any or adequate damages, for the injury created to the property of the petitioner from the said rail-road, by throwing thereon the water from the adjoining land of Thomas Smith, Esq., together with the wash and sand from the same, thereby injuring the meadows of the petitioner.

5th. The said jury have not allowed any or adequate damages, for the fences which the petitioner has put up, and will be compelled to put up on his premises by reason of the said rail-road, or for gates thereon, or for ditches cut thereon, or for keeping the said fences, gates and ditches in repair.

6th. The said jury have not allowed any or adequate damages for the injury occasioned by cutting through the premises of the petitioner by the said rail-road, and rendering it dangerous and difficult to cross cattle, and lessening the value thereof as a grazing farm, for which purpose it had always heretofore been used, and for which it was eminently adapted."

On the 28th of May, 1839, the following order was made by the Court.

"Exceptions dismissed,—The Court being of opinion that they have no power under the act of assembly to examine into the merits of the finding of the jury under the exceptions filed."

The case was then removed to this Court by certiorari, and the following errors assigned.

"1st. The said Court erred in dismissing the exceptions filed, without hearing the merits.

2d. The said Court erred in deciding that they had no power under the act of assembly to examine into the merits of the finding of the jury under the exceptions filed."

Mr. *Meredith* and Mr. *B. Tilghman*, for the plaintiff in error, cited *Trimble* v. *Rail Road Co.* (4 *Wharton*, 52.)

Mr. *A. H. Smith* and Mr. *Edwards*, contra, cited *Large* v. *Passmore*, (5 *Serg. & Rawle*, 51.) *M'Calmont* v. *Whitaker*, (3 *Rawle*, 84.) *Lower Dublin* v. *Paul*, (1 *Binn.* 59.)

The opinion of the Court was delivered by

. (Willing *v.* Baltimore Rail Road Co.)

Huston, J.—(After stating the clauses of the act of assembly and the proceedings in the Common Pleas,)—In the administration of justice, certain parts are peculiarly the province of the Court, and other parts fall more under the power of the jury. Thus the Court cannot assess the amount of damages done to real or personal property—it must be done by the jury, and it is only under peculiar circumstances that the Court will or can properly interfere with this finding. In that case the Court have heard all the evidence, and have had an opportunity of judging whether the verdict is the result of excitement, passion, or prejudice.

In this case the Court do not hear the evidence, or the allegations of the parties. The jury see the ground: the Court do not see it: and I may add, that the former are in law and in fact as competent judges of value and of damages as the Court.

I do not understand the Court as saying, they have no power to interfere in any case. If by mistake or inadvertence a member of the rail-road company, or a party in interest or relative of such party is appointed by the Court; or if there has been corruption or undue influence used; or if either party has not had notice, and perhaps in other cases, the Court would interfere; and they do not say they would not.

If the Court should investigate the adequacy or inadequacy of damages, how would it be done; by the same proofs and allegations adduced before the jury, or by different proofs? It would be rather a novelty than an improvement, to admit a plaintiff who has adduced all his proof, to another trial, in order to adduce witnesses who would say his damages were greater than was proved at the first trial.

This is more like a reference out of Court. On the report the Court know nothing of the witnesses or the facts proved: and in 5 *Serg. & Rawle*, 54, Tilghman, C. J. says, " as to matter of fact, when it appears witnesses have been heard and the fact decided by the referees, it is our general practice to inquire no further, unless there should be something extraordinary in the case." I believe I may add, such extraordinary case has not yet occurred in our Courts.

On the whole, we think under this act the Court have no power to judge of damages. The law gives it to the men to whom our general laws give the assessment of damages; and it requires a view of the premises, which is of more consequence, and likely to be of more avail, and more productive of a proper result than an examination of witnesses before those who never saw the ground.

Although not directly in point, because it relates to the same judges sitting as a Court of Quarter Sessions, I may cite the following rule of this Court:

" On the return of any certiorari for the removal of any order, judgment or proceeding in relation to a public or private road, this Court will not suffer the merits of the case to be entered into, nor

(Willing v. Baltimore Rail Road.)

reverse the order of sessions, unless for some irregularity apparent on the record, or because the Court below have exceeded their jurisdiction, or have erred in their judgment in point of law, or unless due proof be made of fraud, or undue practice in the viewers or parties, which the party complaining of such fraud or undue practices had not neglected to make appear to the Court below."

Now the damages to the party over whose land the road is laid, are often a very material part of the proceedings relating to a road on which proceeding a certiorari lies. This matter had been often brought to the consideration of this Court, and the above rule at length was adopted: and under it we refused to inquire into the value in the *Case of the Newville Road*, where certainly very high damages, judging from what appeared before us, were given—and given to the person who wrote and signed the petition for the road, and who procured other signers.

We see no reason under the rail-road laws for adopting a practice directly opposite to an established rule in other cases: but all the reasons which induced this Court to adopt that rule apply to this and similar cases. There is every reason why the damages first assessed under this act, should not be disturbed, which exist as to damages assessed in Court, and perhaps some other reasons. In these cases the proceedings are not in Court, and the parties not under the supervision of a Court, and there is room for, and more reason to guard against, influence and management, than in a trial in Court. The chances must be equal; and if each party may have a new trial for asking, how many new trials may occur before there is an end of the matter; and at last when there have been different verdicts, if the Court is to decide what is too much or too little, does it not in a great measure take the matter from the tribunal to which the law has given it?

Judgment affirmed.